Next case on this morning's docket is the people of the state of Illinois v. Daniel Smalheiser. We have Mr. John, well we have Mr. Kevin Sweeney for the, let's see, what do we have? We have, okay, you are the appellant, Mr. Sweeney for the appellant and Mr. Clemens for the appellee. You may begin when you're ready, Mr. Sweeney. Good morning. The defendant in this case admitted orally in writing to sexually assaulting a co-ed at Southern Illinois University called Holly while she was unconscious. At the time he made those statements, he was not given the Miranda warnings, so if he was in custody, the statement had to be suppressed, but if he was not in custody, then the statement was omissive. And that's the only issue in this particular appeal, whether the defendant was in fact in custody when he was questioned by certain Southern Illinois University police detectives. Now usually in an oral argument I discuss the facts because they tend to be more persuasive than talking about the law, but I think I have to start by talking about three principles of law, which in my opinion at least are decisive here. And the first one is that review here is de novo with no difference whatsoever given to the decision of the trial court judge, and I'll tell you why that is. It's quite clear that on ruling on a motion to suppress a statement or indeed any other motion to suppress, the findings of historical fact of the trial court judge have to be upheld unless they're manifestly in error. But the ultimate question of whether the evidence will be suppressed, in this case whether the defendant was in custody, is subject to de novo review. And that's why I've been very careful in my briefs to rely only on the uncontradicted, uncontested evidence to establish that this defendant was not in custody at the time he gave his statements. Indeed I've relied more than anything else on testimony out of the defendant's own mouth. So I'm asking this court to take the uncontested, uncontradicted evidence, particularly that in the defendant's own testimony. So are you saying we should accept all of defendant's testimony as uncontroverted fact? No, your honor, I am not. There were conflicts between the defendant's testimony and the detective's testimony. Which version is uncontroverted when there's conflicts? Okay, I'm saying that where there's agreement, those facts in themselves are enough to establish there was no custodial interrogation. Now, the second principle of law I'm relying on, and again all these points of law that I'm making are established in numerous appellate court decisions cited in my brief. The second principle of law I'm relying on is that the test for determining whether a suspect is in custody is not a subjective one. It's not what the suspect believes, but it's what a reasonable, innocent person in the suspect's shoes would have believed as to whether he was in custody or not. While we're on, let me just pick one thing in his testimony. He said he was not told that he could leave at any time, and one or more of the detectives testified that he was told that at the dormitory and then again at the police station. Now, is that, that to me is in controversy. It is, and it's a matter of, actually the controversy was whether the defendant was specifically told that he was not under arrest and was free to go. The detective said he was told that. The detective's report said he was told that. The defendant denied that he was told that, and the judge said that the defendant's testimony on that point was closer to the truth. Okay, just to get your point straight then, you're saying that is in, so that is not relevant though to the determination here. That controversy is not relevant. It is relevant, but other uncontradicted evidence establishes that the defendant was not in custody. We're not, we're not relying, we're not contesting anything the trial judge found as a matter of fact. On that particular point, he found that the testimony of the defendant was closer to the truth. So, okay. Are we to accept then the defendant's version on that particular part of the case? Right. Okay. That's all I want. We, I mean, I think that Judge Grayson's finding was just made to get this case off of his docket after two years, but nevertheless, he found that the defendant's version was closer to the truth on a single point, that whether he was told he was not under arrest and was free to go. Of course, the defendant, by his own testimony, was repeatedly told he was going to be taken back to his dorm after questioning. So, it's pretty much the same. But on that particular point, we accepted trial judge's finding because, as I said, it's our position that the uncontested, uncontradicted evidence, totally apart from any conflicts between the testimony and the witnesses, establishes that the defendant was not in custody. And the third principle of law we're relying on, as stated by the U.S. Supreme Court and accepted by the Illinois courts, is that a defendant is in custody at the time of questioning if and only if he is formally under arrest or subjected to a level of restraint equivalent to that of a formal arrest. Now, if you look at the evidence here, no reasonable innocent person in defendant's shoes could have ever believed that he was under arrest or in custody at the time he gave his statements. And the most decisive reason which shows that is that when the detectives asked defendant to come down to the SIU police station and give a statement, he said, quote, that's fine as long as I'm back in time for my next exam. Now, how could any reasonable innocent person, having asked the officers to return him to his dorm in time for his next exam and having the officers agree to do it, how could any reasonable innocent person under those circumstances have believed that they were in custody? That item of evidence alone, defendant's statement that he agreed to go, provided he would be back in time for his next exam and the fact that the defendant himself testified that the officers agreed that they would do that shows that he was not in custody. But there's a lot of other evidence which shows that he's not in custody. Defendant himself testified that he was told not only on that occasion, but repeatedly on other occasions by the detectives that he would be returned to his dorm after questioning. So it's undisputed that the defendant was told, asked to be returned to his dorm after questioning, that he was promised that he would be returned to his dorm after questioning, that the officers repeatedly told him that, and of course, in fact, that's exactly what happened. As soon as the defendant finished writing out his written statement, he was promptly returned to his dorm. So, I mean, okay, let's assume I'm a reasonable innocent person. Let's assume you're a reasonable innocent person. If officers ask you to respond to questions at the police station, but they promise you that you'll be returned to your residence immediately after questioning, they say that repeatedly, and they in fact do that after questioning. Do you, as a reasonable innocent person, believe that you're under arrest? Or that you're subjected to a restraint equivalent to being under arrest? Of course not. And there's lots of other evidence which shows that this defendant was not formally placed under arrest or subjected to a degree of custody equivalent to a formal arrest. I mean, of course, there was no formal arrest. There was no booking. There was no handcuffing. There was no photographing. There was no fingerprinting. In fact, the uncontradicted testimony of the detectives is that they never touched him at all in any way which would have restrained his liberty. Were these detectives armed at the time they did this? They were. They didn't display their weapons. I mean, they were armed. That is correct. Should his medical condition in any way be taken in under this reasonable person argument? Well, no, and for several reasons. First of all, Judge Grace's findings said nothing about his medical condition influencing his ability to determine whether he was in custody or not. Well, there was some testimony, wasn't there, by someone at the hearing as to his condition and what he would think? There was testimony by a psychiatric nurse that he suffered from hyperactivity attention deficit disorder. That testimony was not directed to the issue of custody at all. It was directed to the issue of voluntariness, which Judge Grace made no findings on and would have to be decided on remand. Never did that expert witness say that this defendant had any medical condition which would interfere with his ability to determine whether he was in custody or not. And in fact, this defendant's a high school graduate. He's a college student. He's probably more intelligent, more knowledgeable than your average person who's questioned by the police. In other words, there's no evidence and no reason to suspect that his ability to determine whether he was in custody was influenced by his hyperactivity attention deficit disorder. Mr. Sweeney, you said a psychiatric nurse testified? It says a doctor. It's sort of weird. She has a doctorate in nursing. I didn't know that existed until I read this record. SIU-E has a doctorate program? Yeah. Okay. Clear setup. My old son goes to SIU in Carbondale, so I apologize for not being better acquainted with the SIU-Edwards bill. Then one other question I had. I thought he said that he was told to write down without her consent or something like that or without her knowledge, that he was told that when he was writing out his alleged confession. Told what? That the person was either passed out or something without her consent. Was he told that? Okay. He said he was. Judge raised me no findings on that point. The detectives both testified that they didn't tell him to write anything in the statement except they asked him to say at the end that he wasn't subjected to consent. And he said they did. Right, but that's not relevant to the question of custody, Your Honor. I'm not arguing that. I'm just asking you, did he say it? He did say it, yes, and the detectives denied it. Judge raised me no findings on the subject. It's not, in my opinion, at least, relevant to the question of whether he was in custody. He testified that Detective Eberhard told him that unless he wrote out a statement, he was going to have to take a polygraph. Now, wouldn't a reasonable person think at that time that maybe he wasn't going back to take his exam unless he cooperated with them and either wrote it out or took a polygraph? Well, that's not what the defendant testified to. He testified, too, that he was repeatedly advised that he would be returned to his dorm after questioning. Well, the defendant's gotten his statement of facts. The defendant further testified that he was told if he did not make a written statement, he was going to have to take a polygraph. He cites to the transcript, page 98. Would the transcript reflect that, or is that incorrect? Yes, it would. And are we to assume that that's what the judge found, if that's not a controverted fact? It is a controverted fact. It is? So now does manifest way to the evidence come involved now? No, because Judge raised me no findings on that point. Well, I mean, a trial judge has to make findings of fact, but I don't know a rule that says they have to list everything that ever entered into their mind in deciding the case. The statutes do say, in ruling on these motions, they should make findings of fact. And Judge Grace, in fact, made a findings of fact in a written order, which is attached to McBrief. So you're saying that unless it's in that written order, he can't consider it? I think that in reviewing the judge's order, you have to examine the facts that's found by the trial court judge. Are we limited to what's in the order? If you read the order, you'll find that, yes, Judge Grace did list all the factors which led him to determine whether the defendant was in custody. He made detailed written findings. But in any event, that testimony of the defendant relates only to the written statement and would not justify suppressing any oral statement that he made prior to that. Now? I wanted to also ask you about, it seems to be that it was pretty clear that Judge Grace had had previous experience, I don't know if it was obviously with this police department at SIU, about their mode of operating with respect to interviewing and taking these suspects to what they called a lunchroom or interview room. And I think the judge considered it something more than that and kind of a way to further isolate and make a suspect believe that they were not free to leave. It was a third story room. Well, I'll tell you how much this defendant was isolated. The uncontradicted testimony is that he was alone in that room with an open door for part of the time when he wrote out his written statement. Somebody said that one of the officers didn't leave, as I recall. I thought that was controversial. Respectfully, Your Honor. And I may be wrong, but I thought that I read that. Respectfully, Your Honor, I believe Detective Leonard testified that the defendant was alone in the lunchroom for part of the time when he wrote out his written statement. And at least as far as I'm able to determine from my reading of the record, that testimony was never contradicted. Okay. Now, maybe Judge Grace doesn't like the idea that officers tell people, as they testified they did and put in their report, that they're not under arrest, they're free to go, and then take them to the station and arrest them without giving them their Miranda warnings. Whether Judge Grace likes that or not, he was, and this court is, bound by the law which says that Miranda warnings are not required unless the defendant is in custody, and custody is a formal arrest or restraint equivalent to a formal arrest. I mean, legally, there's nothing wrong with deliberately questioning someone under non-custodial circumstances if you think that's more likely to result in an escapement. But those circumstances can change at any time. Even if they had told him that he was not under custody and could make the choice, the circumstances that presented themselves could change with respect to what a reasonable person could think at the point, for example, if he was told that if he didn't write out the statement he was going to have to stay and have a polygraph test performed. Except, where do the circumstances change? He was questioned by a single... I'm asking if you believe the circumstances can change. It is possible, and indeed it happened in some of the cases cited in my brief, that non-custodial interrogation could be converted into custodial interrogation. It didn't happen here. The defendant was questioned in the lunchroom, which was 24 feet by 12 feet. The door was open. He was left alone in that lunchroom for part of the time. We know that he was returned to his dorm immediately after giving his statement. Where was the degree of restraint associated with a formal arrest here? It didn't exist. In the cases we do see where they advise them that you're not under arrest and they take them back or let them go afterwards, do you think that's a cure-all? I mean that a policeman lets them go home afterwards. Theoretically, is it possible to be in custody and let out of custody? For an hour he was in custody and at the end they decide, well, we can find this guy anytime, anywhere, no problem, and just to cure it, they just let him go home. Well, you're right, it's not a cure-all. Every police department I know of, if they arrest someone, they have to process them, but that's not what happened here. That's not what happened here. He was advised before he went to the station, according to his own testimony, that he would be returned to his dorm after questioning. According to his own testimony, he was repeatedly advised during questioning that he would be returned to his dorm afterwards, and in fact he was returned to his dorm afterwards. So it wasn't a cure-all. The entire transaction, during the entire transaction, everybody knew and everybody said that he was going back to his dorm in time for his next exam. I mean, you know, if you arrest someone and let them go, that's not a cure-all. If you advise him, if the person asks to be returned to his residence after questioning, is assured that he will be, repeatedly assured that he will be returned to his residence after questioning, and is returned to his residence after questioning, then that is a cure-all. Now, there was just, I mean, aside from the fact that everyone knew that this defendant was going to go back to his residence in time to complete his next exam, there's a total absence of coercive atmosphere here, according to the uncontradicted testimony. As long as he cooperated, perhaps. Well, I'm confident that if he had said, I don't want to talk to you anymore, they would have released him, but that question didn't arise because he never did assert any right to remain silent or display any reluctance to give a statement. If you look at the appendix to my brief and examine his written statement, which he wrote out in part while he was alone in the lunchroom, you'll see that it's clear, coherent, and the... Did he know it was the lunchroom? I mean, the policemen know it's the lunchroom, and everything else, does he just know it's the third floor of the police station? Or whatever building he's on? Well, the reason it's significant is that it's not a small interrogation room. There's no closed door. There's only one female plainclothes officer present continuously. They weren't serving food in there. I mean, there wasn't a stack of people in line in the smorgasbord. No, that is correct, there wasn't. It was a big room with tables in it, and sometimes people ate lunch in there. Nobody was eating lunch that day. I think any college student would have known that it's not the kind of room where police officers question people who are actually invested. Can we get back to that part about the polygraph? You're saying it wasn't said, or it was said? If you don't cooperate and do something, you'd have to take a polygraph. If you don't make a written report here, if you don't fill this out, you'd have to take a polygraph. Or is that contested? That is a contested issue of fact. At the hearing, Judge Grace made detailed findings of fact, made no reference to that testimony. Was there any history of this room and these people that they say you can go, that they've never had anybody arrested after, or was under arrest, they let everybody go that went to that room? There's no testimony on that point. I suspect that some people who've given a detailed confession of a crime of violence were, in fact, arrested after questioning. I don't know that. There's no testimony on the subject. And was there any testimony as to we tell people that they're not under arrest, but sometimes later we do arrest, but we did tell them they're not under arrest and we're not going to return them. Has that ever been anything about that? Nothing. There's no testimony about that in the record. Okay, well, thank you. Thank you, Mr. Slater. Of course, we ask that the finding of the trailhead be reversed and the matter be remanded for a hearing on the other issue raised in the motion to suppress it. Thank you. Mr. Clemmons? May it please the Court, Counsel, Mr. Kleene? I'm John Clemmons for the appellee, Mr. Daniel Smallheiser. Your Honors, Judge W. Charles Chuck Grace was correct in this case. He was correct on the facts and he was correct on the law both applying Illinois law and decisions from the United States Supreme Court. His decision to grant the defendant's motion to suppress based on a Miranda violation should not be overturned. I believe this morning the importance of this case is really to examine Judge Grace's order. It's not so much what Mr. Sweeney and I say in our briefs, but what Judge Grace found in his extensive order. And if you go through that order in the appellant's brief appendix, he reviews the evidence. He goes through what was heard. And this was a case, I did the trial work, four hours of testimony, two police officers, Officer Eberhardt, Renee, Officer Chuck Leonard, Charles Leonard, and then Dr. Julie Cabret. And counsel is correct. She began a nursing career and then went on and received a doctorate. And she's essentially in a psychiatric medical field. Eminently qualified. I think you can read her background. Does research. Treated Mr. Smallheiser. He was a treating professional. And then the defendant testified extensively in this case. So if you review the evidence, Judge Grace goes through all of that. And I would submit he articulates the issue correctly. And the issue focuses on whether or not Mr. Smallheiser was in custody. If he was in custody, should have been given Miranda's. If he wasn't in custody, then didn't need Miranda's. What Judge Grace did not do and I want to mention in my limited time is he never went on to the second issue which we had put forth in our motion to suppress and that was voluntariness of any statements that were made. And if you examine his order, he decides he's not going to go there because he's found the Miranda violation. But he did not address the voluntariness aspect. I would submit he then applies the law correctly after he goes through the evidence and he presents a clear and compelling analysis of the facts in this case. And I would submit what he is looking at is of course the Miranda decision 43 years ago. 1966. Miranda. And yet we're still coming here with cases with police officers who I would contend in this case have made every effort to cast aside that Miranda decision to come up with a way to sidestep it to come up with some creative plan to get around having to tell a suspect his Miranda rights. This is just such a case. Those officers went to that dorm. The evidence indicates Mr. Smallhizer the appellee and defendant was the focus. That's who they were after. They even checked records on him. Found out he was a freshman, 19 years old. No criminal record whatsoever. They then confronted him outside his dorm room He indicated in his testimony and as we've talked much of this is uncontroverted that he had just come back from an examination. It was finals week. Although one of the officers didn't seem to comprehend it was finals week on the campus of SIU and he had another final later that day. He had also been up most of the night studying for his finals. Clearly this was a young man who was very tired. Is there anything to indicate they were aware of his learning abilities or limitations? I don't think so. That's not something the records would show. I think he testified or indicated he was in a special program at SIU. Well he checked his records of where he was enrolled and things like that. I didn't know if that indicated to them one way or the other. I don't think it would tell that. I don't think there was any indication one way or the other. Dr. Carway of course indicated this is an individual with some problems. He disagrees as to what happened outside his dorm. Now there is no disagreement that there was nothing whatsoever to prevent Everhart and Leonard from going into his dorm room and sitting down and talking to him. One of the officers said well his roommate could have been there. And I think the question I cross is you could have asked his roommate to leave. There was no reason to go back to the police station. I asked the officers, why did you have to go back to the police station? And Chuck Leonard had some incredible answer about that. He's more comfortable there. Again, 43 years of Miranda and they still are trying to figure out ways to get around it. They had every intention whatsoever of taking this 19 year old young man back to the police station. And not to the lunchroom but the interview room. Buried up on the third floor of the station a room that sometimes happens to be used for staff eating lunch. An interview room. Standard interview room. Whether the door is open or shut what difference does it make? This is way inside the police department. No question this 19 year old man, young man, no criminal record and he indicated also no experience whatsoever dealing with police. I think he said he never even had been to a police department or a police station. Judge Grace goes through factors. Factors that the Supreme Court has discussed in the Braggs case. People vs. Mary Braggs, a very important case I suggest very relevant to this case. Also factors this court discussed in People vs. Fletcher 5th District case. I believe Judge Chapman was on that case. These are your location, time, length, mode mode of interrogation, number of police officers present, indicia of formal arrest, age, intelligence of accused mental makeup of the accused. That's why Julie Carbrae testified. This is not average normal 19 year old individual. He has got a number of problems clearly detailed in Dr. Carbrae's testimony. I apologize, I don't mean to interrupt you but in hearing your argument at least to me one of the keys to the case is the standard of review. You've heard that the state believes that de novo review across the board is our only standard in this case. Would you mind addressing that? Yes, Your Honor. I disagree. I figured you would. Let me tell you why I disagree. I think it's a little more difficult than that. I'm not the greatest writer and maybe I have a little problem in my standard of review section because I think what this court has to do is it has to give great deference to Judge Grace's factual findings and that this court, the state, and myself are essentially stuck with Judge Grace's factual findings unless they are manifestly erroneous and his most significant finding is there was custody and that he believes the defendant over the two police officers. He makes that very clear. Second part is when he applies the law to the whole situation. That's where it's de novo and that's where I agree with people that this court can apply a de novo review to the ultimate legal ruling. So I think it's a mixed process. And this has been done. I would suggest there are three or four key cases on the law. People vs. Mary Braggs cited in my brief. This was a Supreme Court case involving a double homicide horrible situation and a Miranda custody situation. People vs. Carroll, another homicide case out of the 3rd district, 2001. A couple of Rock Island officers went to Quincy, Illinois to talk to a gentleman who was in a nursing home, shelter care facility and they did this oh you're not under arrest, you're not in custody but come on down to the local police station with us. They were out of town in Rock Island and they ended up with a significantly incriminating statement. The 3rd district threw it out. And finally there's another case out of the 4th district. People vs. Gorman that I differ with the people on as to whether it's relevant. I think it's very relevant. What I like about it is it came from the University of Illinois campus police investigating some guys burning the turf at the football stadium and they all went over to this house where everybody lived. You all got to come down to the police station. Nobody's under arrest thing. Some good discussion. Then we have certainly Supreme Court cases Yarborough vs. Alvarado Stansberry vs. California. Yarborough is the 2004 case out of Los Angeles young man, a couple years younger than the defendant in this case and Stansberry goes back a little farther 1994 case. I have no quarrel that the custody test is objective what a reasonable person would think in that same position but keep in mind that part of the reasonable person has to be this reasonable person who has some mental problems clearly in the evidence by Dr. Carver. If I might address some points that counsel for the people made the de novo issue I've talked about. Yes this is de novo but only in part this question about from the defendant's own mouth. I'll go with you but I need to get back. I've got another final exam look at the testimony of Mr. Smalliser he explains this I believe it is on page 98 what he explains page 96 of the transcript T096 in the record why did you go to the police department with them from the dorm? Answer I felt I had no choice he even explains to Judge Grace in his testimony later that this was in response to Mr. Webster's question that he obeys police officers because that's the way he was brought up his testimony indicates in his own words he thought it was a command he wasn't being asked to go to the police station he perceived this as a command his testimony totally contradicts the two police officers on the issue of whether they told him you're not under arrest you're free to go he does not recall that being told to him at all also contradicts those police officers in that he says once they put him in a squad car, drive him to the police station take him up through to the third floor he goes into this room and they begin this interrogation process and he is told at some point he needs to write everything down and if he doesn't then page 96 I'm sorry 98 they told me if I did not answer a written statement I would have to be like set up on what is called a polygraph either write it down or we're going to have to give you a polygraph he also explains how Officer Leonard comes in at one point and tells him something to the effect of we've got DNA in this case now there was some questioning by your honors on can you is there some way for law enforcement to cure the custody issue by letting the suspect go no once you're in custody once your liberty has been restrained once this coercive control atmosphere has occurred they can't undo it by saying you can go home now or we'll drive you home or you're free to leave or the door is open you can walk out if you want that doesn't fix it that does not fix it it's irrelevant once you're in custody you cannot undo it I would disagree respectfully with counsel that Mr. Smallheiser has more than just attention deficit disorder problems he was on medication on the day of the incident in question here something called concerta but he also has other difficulties he has as she explained a condition called dysarthria which has to do with taking thoughts and transferring them properly in written form it's a comprehension problem so this is a young man with some definite problems mentally custody is not you're under arrest that would be an example but custody is much broader than that decision after decision custody is a restraint of your liberty it's a restraint of your freedom that's what took place nobody told Daniel Smallheiser ever you're under arrest they did let him go but again irrelevant they restrained his liberty this process could have been so simple let's go into your dorm and sit down and talk about something and then even oh we need to give you a Miranda didn't do it I would suggest your honors and would be happy to answer any of your questions Judge Grace has gone through this very well, very analytically applied things properly and he's found that this 19 year old college student with no criminal record no knowledge of police tactics and how they operate placed him in their power in their control, took him in a squad car doesn't make any difference it was unmarked and while under their control his liberty was restrained and he made inculpatory or damaging statements that they wanted to further their investigation the rights of this suspect this accused hasn't been convicted of anything were violated in this police dominated atmosphere Justice Steigman cites an interesting law article it's in my brief from Georgetown Law Review from kind of like our old friend from law school textbooks Yale Commissar writing on criminal law and the Georgetown Law Review discusses how why do we have Miranda and what are we talking about with custody we're talking about domination control, creating an atmosphere that's why they took Daniel to the police department  that question was asked police denied it of course they have their papers and forms down there that's the reason now this is their territory, their control their investigative room also used for lunch might I answer any questions if you're honest thank you very much for your time today thank you Mr. Plumas Mr. Sweeney, rebuttal I heard an emotional appeal about how this defendant was really a victim, well of course the real victim here is the girl who was sexually assaulted while she was unconscious Mr. Sweeney, we know she's a victim too and we don't have any loss of, and we know that but sometimes we just have to deal with the issue before us  this defendant a victim he was promised he would be returned to his residence after questioning, he was repeatedly told that he was returned to his residence after questioning he was never physically restrained he was never handcuffed he was questioned in a large room with an open door he was even left alone in that room for a while he was always, the officer who interrogated him was a female plainclothes detective he was never subjected to any kind of abusive treatment this is a victim, I mean let me ask you this Mr. Sweeney, and I apologize to interrupt you but you've only got so much time, do we accept the doctor's testimony or the nurse as his mental condition or status do we accept that? Yes and then do we consider a reasonable person with that condition? is that how we analyze it? not somebody with, maybe our training or your training, a person with that age, that mental condition, that reasonable person your honor, yes there is no testimony that hyperactivity attention deficit disorder would interfere with this defendant's ability to know whether he was in custody no, zero, such testimony was directed solely to the issue of whether the furthermore, there's no reason why this court should assume that attention deficit hyperactivity disorder in a college student would prevent him from knowing whether or not he was in custody, so take it, so there's no evidence to support the theory that this prevented him from knowing whether or not he was in custody and if you look at someone, now, did she testify and I know he never reached the issue of voluntariness but did she testify that she felt based on his condition and the circumstances that his statement was involuntary? that's what she testified to, yes well even though that issue wasn't reached, wouldn't that be relevant to determining whether he thought he was in custody or not? no, custody and voluntariness are completely different issues and voluntariness has yet to be determined by any judge, I mean how would having attention deficit hyperactivity disorder prevent a person from knowing that the door of the room was open, that he was going to be returned to his dorm after questioning, that the person who was questioning him was a woman in plain clothes, that he was left alone in a room while writing out his statement I mean, obviously he had enough intelligence to get into college how would that condition interfere with his ability to perceive these things? now, if you look at the Wiffler case that involved an 18 year old student interrogated in an interrogation room with a closed door can we back up just a little, you said he was to get into college, but was he not in a special curriculum for HDDA, whatever ADA, whatever he was he was in a special condition of college students not just college now there's one thing I think I have to clarify within my limited time concerning the polygraph, Judge Grace did mention the testimony about the polygraph in his written findings, but on page 404 of the record and it's in my appendix, he specifically refused to make a finding on whether the detectives were telling the truth in saying that they never told the defendant that or the defendant was telling the truth, in saying that they did say that since Judge Grace refused to make a finding, there are several ways you can deal with that, first you can simply say that the oral confession, which was made before the written confession is admissible, or you can say, since Judge Grace didn't make any finding about a key fact, you could send it back since there has to be a hearing about voluntariness anyway, or you can make up your own mind about who was telling the truth, since the trial judge specifically refused to make a finding on the subject now sure, the test is an objective one it's not what the defendant thought still that's what he testified to what he thought, it's whether a reasonable innocent person in his position would have known that he was not in custody and counsel for defendants spent most of his argument attacking the police but the police could not have been more polite and more fair in dealing with this person this is the kind of interrogation which should take place there wasn't any hint of coercion and the defendant knew he was going back to his residence it was over, for that reason the finding of the trial court should be reversed and the matter should be remanded for further proceedings on the motion to suppress thank you Mr. Sweeney, thank you Mr. Cormans we'll be taking a brief recess